### RAFFEL *v.* EPWORTH.

1. FALSE REPRESENTATIONS—RELIANCE OF PARTY DEFRAUDED.

A contract will not be avoided for misrepresentations the falsity of which was made known to the party complaining before the completion of the transaction.

2. VENDOR AND VENDEE—FORECLOSURE OF MORTGAGE—DEFENSES.

It is no defense to a suit to foreclose a purchase-money mortgage that knowledge of an outstanding incumbrance was withheld from the vendee, where the vendor had at the time arranged for its release, and it was so released after the filing of the bill, and before damage had resulted to the defendant.

3. SAME.

A mortgage payable absolutely at a specified time, given to secure the payment of another incumbrance on land conveyed to the mortgagee, may be foreclosed by him upon default, without first paying off such incumbrance.

Appeal from Wayne; Frazer, J.  Submitted November 6, 1895.  Decided November 19, 1895.

Bill by Frederick Raffel and Mary Raffel against Alice E. Epworth to foreclose a mortgage.  From a decree for complainants, defendant appeals.  Affirmed.

*Henze & Slade*, for complainants.

*John Galloway* and *Henry M. Du Bois*, for defendant.

Montgomery, J.  This suit was instituted to foreclose a mortgage for $350 given May 13, 1893, and payable August 2, 1893, according to the terms of an accompanying note.  The bill was filed September 15, 1893.  The defendant set up original matter in her answer, and asked for affirmative relief.  The facts set up in the answer as constituting a defense are that the defendant was the owner of 40 acres of land in the township of Romulus, subject to two mortgages, which aggregated in amount $350; that on the 13th of May, 1893, she agreed with the complainant Frederick Raffel to exchange this farm for a house and lot in Springwells, and, to make the exchange even, gave the mortgage in question as an indemnity against the mortgage on the farm; that said complainant represented to her that the lot which he was trading included all the land between the two fences then forming the inclosure in which the house stood, and that it was 60 feet front by 150 feet deep; whereas the land conveyed consisted of a single lot 30 feet by 150.  The defendant also sets up that the house and lot were subject to a life lease, and that this fact was concealed from her at the time.  It is also contended that complainants were not entitled to foreclose until they had been compelled to pay or had paid the mortgage on the farm.

The case is not altogether clear on its facts.  There is ample room for finding that defendant did expect that she was to receive 60x150 feet of ground, and there is

direct testimony, aside from her own, that the complainant represented the property to her as of these dimensions. On the other hand, such representations are strenuously denied, and the fact appears that the conveyance was of a single lot, which, according to the abstract, was but 30 feet in width, and it would appear that it is not common to plat lots in Detroit or its suburbs as wide as 60 feet; but the most significant testimony is that of Mr. Ohrns, the attorney who drafted the deed to defendant, which is to the effect that there was a sale of personal property to the complainant at the same time, and, after the deed and mortgage were drafted, the papers were left with him, to be delivered when complainant should pay $170, the purchase price of the personal property. A few days after the deed was signed, and before payment of the $170, the parties met in his office, and defendant there stated that she supposed that the lot had a frontage of 60 feet. He (Ohrns) at once called complainant's attention to this claim, and complainant insisted that he had conveyed just what he agreed to. Mr. Ohrns then stated to the defendant that, if there was any error, then was the time to correct it. She then announced that she was satisfied, and accepted the $170. This testimony is corroborated by other witnesses. The complainant, it is true, fixed the time of this conversation on the 13th, the day when the deed and mortgage were signed; but it is quite possible he is confused as to the date or occasion. This testimony is contradicted, but there is nothing improbable in it, and whether it is to be credited depends upon the credibility of the witnesses. The circuit judge, who saw the witnesses, evidently accepted the testimony of the witnesses for the complainants; and, while we are not as well satisfied as we would wish to be, we think that on the whole the weight of testimony supports complainants' contention on this point.

As to the incumbrance of the life lease, it seems com-

plainant had an arrangement with his father for its release, and it has been in fact released to him since the bill was filed, so that no damage resulted to defendant.

The mortgage in terms provided for the payment of the $350 August 2, 1893. Mrs. Epworth swears that it was given by her to secure the payment of the mortgages on the farm. This mortgage was not, therefore, according to her testimony, given as a mere indemnity, but was security for the payment of the mortgages. The breach entitled complainants to foreclose. It was evidently not the intention of either party that the complainants would be bound to pay off the incumbrances before they should be entitled to resort to their security.

Decree affirmed.

The other Justices concurred.